## No 17-20346

——————————————————————

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

——————————————

J.D. JORDAN, Plaintiff- Appellant

V.

ROBERT FLEXON, MARIO ALONSO,

CATHERINE CALLAWAY, JEANNE BURKE,

CLINT FREELAND HENRY JONES,

AND DYNEGY, INC., Defendants - Appellees



**On Appeal from the United States District Court for the Southern District of Texas USDC No. 4:16–CV-3316, Honorable Judge Kenneth M. Hoyt, Presiding**

ORIGINAL BRIEF OF APPELLANT
J.D. JORDAN, Pro Se
Box 23866
New Orleans Louisiana 70183
504-737-3854

CERTIFICATE OF INTERESTED PERSONS

CERTIFICATE OF INTERESTED PERSONS

J.D. Jordan Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

## J.D. JORDAN, Plaintiff- Appellant

## V.

## ROBERT FLEXON, MARIO ALONSO,

## CATHERINE CALLAWAY, CAROLYN BURKE,

## CLINT FREELAND, HENRY JONES,

## AND DYNEGY, INC.,

## Defendants Counsel for Appellees

Joseph A. Fischer, III
Texas Bar No. 00789292
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
Email: tfischer@jw.com

Jay K. Wieser
Texas State Bar No. 24060826
Jackson Walker L.L.P.
777 Main Street,
Suite 2100
Fort Worth, TX 76102
(817) 334-7200
(817) 334-7290 – Fax
Email: jwieser@jw.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, J.D. Jordan respectfully requests oral argument. This appeal requires a complex factual application to Section 16(b) of the 1934 Securities Exchange Act and to interpret certain Rules created by the Securities and Exchange Commission concerning certain claimed exempt transactions that are not comprehended within the purpose of Section 16(b) of the 1934. Section 16(b) of the 1934 Securities Exchange Act of 1934 has the purpose of preventing unfair use of information which may have been obtained by such beneficial owner, director or officer by reason of his relationship to the issuer. This appeal will require this Court to determine whether Oral Argument may assist the Court in resolving the question of whether a transaction is "comprehended within the purpose of the statute" and whether certain transactions are discretionary transactions and whether they have satisfied the specifics of the individual approval requirements under SEC Rule 16b-3(e).

## Table of Contents

CERTIFICATE OF INTERESTED PERSONS ...................... **2**

STATEMENT REGARDING ORAL ARGUMENT................ **3**

TABLE OF CONTENTS .......................................... **3**
TABLE OF AUTHORITY ......................................... **5**

JURISDICTIONAL STATEMENT .............................. **7**

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........ **8**

STATEMENT OF THE CASE ..................................... **11**

SUMMARY OF THE ARGUMENT................................ **14**

ARGUMENT ...................................................... **15**

CERTIFICATE OF SERVICE ..................................... **28**

CERTIFICATE OF COMPLIANCE .............................................     **28**

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

*At Home Corp. v. Cox Commc'ns, Inc.*, 446 F.3d 403, 408 (2d Cir. 2006).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). the Court must construe a complaint liberally and "accept[] all factual allegations as true," it need not give "effect to legal conclusions couched as factual allegations,"

*Berry v. Armstrong Rubber Co.*, 989 F.2d 822 (5th Cir. 1993), *cert·denied*, 114 S.Ct. 1067 (1994).

*Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir. 1992)

*Foremost-McKesson Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976)."curb the evils of insider trading [by] . . taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.

*Gollust v. Mendell*, 501 U.S. 115 (1991)

*Halebian v. Berv*, 631 F. Supp. 2d 284, 294 (S.D.N.Y. 2007) aff'd in part, vacated in part on other grounds by 644 F.3d 122 (2d Cir. 2011). Further, courts "routinely take judicial notice of Form 4 filings at the motion to dismiss stage, and consider them for the truth of their contents." .

*Gryl ex rel. Shire Pharm. Grp. PLC* v. Shire Pharm. Grp. PLC, 298 F.3d 136, 145-46 (2d Cir. 2002) ("So long as the relevant securities transaction is between an issuer and insider, and ... the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation.").

In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014)

*Neitzke* v. *Williams* , 490 U. S. 319 , 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations");

*Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972)

*Sanjuan* v. *American Bd. of Psychiatry and Neurology, Inc.* , 40 F. 3d 247, 251 (CA7 1994)

*Scheuer* v. *Rhodes* , 416 U. S. 232 , 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")."

*Sterman v. Ferro Corp.*, 785 F.2d 162, 166 (6th Cir. 1986) ("Section 16(b) imposes a strict liability upon transactions coming within its parameters and this court has long recognized that consideration of issues such as motive, intent and the use or abuse of inside information is irrelevant in analyzing actions under its mandates.");

*Sun River Energy, Inc. v. McMillan*, 3:13-cv-2456-D, 2014 WL 4771852 at *6 (N.D. Tex. Sept. 25, 2014) (citing Gwozdzinsky, 156 F.3d at 308). Thus, "[t]o plead a plausible claim for a violation of Section 16(b), plaintiff must plead facts sufficient to show that there is the purchase and sale (or sale and purchase) of a security not otherwise exempt from Section 16(b)."

*Swierkiewicz* v. *Sorema N. A.*, 534 U. S. 506, 508 n. 1 (2002).

**Statutes**

Section 16 (a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a)

Section 16 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b)

Section 16 (c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(c)

**Rules**

FRCP 12 b-6

Rule 16 (b)-3

Rule 16 (b)-3(b)

Rule 16(b)-3(d)

Rule 16 (b)-3 (e) Note 3.

## Other Documents

SEC Release of August 9, 2005
SEC Q and A May 23, 2007
SEC Amicus Curiae Brief in case No. 04-35715 U.S. Court of Appeals for the
Ninth Circuit

Letters from the ABA
Letter from New York State Bar Association

*SEC Adopts a Radically Different Rule 16b-3,* FW Cook, August 2, 1996.

*5 C. Wright & A. Miller, Federal Practice and Procedure* §1216, pp. 235–236 (3d
ed. 2004)

## STATEMENT OF JURISDICTION

This is an appeal by J.D. Jordan ("Jordan"), a plaintiff in a civil case on

behalf of Dynegy, Inc to collect short swing profits under Section 16(b) of the

Securities Exchange Act of 1934 [15 U.S.C. 78p(b)] ("Section 16(b)") The district

court had jurisdiction of the case pursuant to Section 27 of the Exchange Act, 15

U.S.C. Section 78aa. The court granted the Defendants Robert Flexon, Mario

Alonso, Catherine Callaway, Jeanne Burke, Clint Freeland Henry Jones, Rule

12(b)-6 Motion to Dismiss on April 26, 2017. Jordan filed a timely notice of appeal

timely on May 17, 2017 (ROA 277). This Court has jurisdiction pursuant to 28 U.S.C. Section 1291.

## STATEMENT OF ISSUES

The following issues are in dispute whether; the Section 16(b) claims against insider officers should be dismissed because the Dispositions[1] are exempt under Section 16(b)-3(e) as pre-approved dispositions to Dynegy, Inc. ("Issuer" or "Dynegy"). (ROA.54) Section 16(b)-3(e) can not be relied upon as an exemption as Section 16(b)-3(e) does not exist. Section 16(b) *"Profits from purchase and sale of security within six months"* is directly followed by Section 16(c) *"Conditions for sale of security by beneficial owner, director, or officer."*

The insider officers later argue that the Dispositions are exempt pursuant to Rule 16(b)-3(e). (ROA.57) This exemption is based upon the Issuer *not* having discretion in the transaction. The issuer Dynegy, has discretion in the transaction and is authorized by the Dynegy Grant Agreement which states *"the Company is authorized to withhold from **any cash or stock remuneration"*** (ROA.175, 178)

---

[1] Defendants call their sale of stock a 'Disposition' when seeking an exemption under Rule 16(b)-3(e); however on each of Defendants' Form 4 they specifically avoid calling the transaction a Disposition exempt pursuant to Rule 16b-3(e) by selecting option D - Disposition to the issuer of issuer equity securities pursuant to Rule 16b-3(e), rather they rely on option F which states
"F - Payment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3"

The next issue in dispute is alternatively plead by the insider officers in their MOTION to Dismiss *Pursuant to Federal Rule 12(B)(6)* where they posit that the Section 16(b) claims against insider officers should be dismissed because the Dispositions were not Sales and are not the type of dispositions that Section 16(b)'s restrictions are meant to restrict. (ROA.59)The Officers are not alleged to have had any control over the timing of the transaction, the amount of the tax payment made to Dynegy, or the price at which the restricted stock units were disposed. Plaintiff/ Appellant's position is that the Defendant Officers had the Option whether to send in cash or allow the Company to withhold cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee. (ROA.57) The Defendant's intent or design is not a factor contemplated by Section 16(b) which states "Profits shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction."

The question of whether the Defendants transactions are exempt is based upon whether the transaction is a discretionary transaction. The Dynegy Grant Agreement ("Grant Agreement") (ROA.175) that governs the sale states:

> *Withholding of Tax. To the extent that the receipt of the Stock Units results in compensation income to the Employee for federal or state income tax purposes, the Employee shall deliver to the Company at the time of such receipt, as the case may be, such amount of money as the Company may require to meet its obligation under*

> *applicable tax laws or regulations, and if the Employee*
> *fails to do so, the Company is authorized to withhold*
> *from **any cash or stock remuneration** (including*
> *withholding any Stock Units distributable to the*
> *Employee under this Agreement) then or thereafter*
> *payable to the Employee any tax required to be withheld*
> *by reason of such resulting compensation*
> *income."* (ROA.178)

The insiders/officers claim that since the insider or officer has the option to pay the tax in cash first that this somehow nullifies the Company's discretion to pay in cash or stock which would cause this to be a discretionary transaction which lacking the specific approval required to be exempt is thus a violation of Section 16(b), 15 U.S.C. § 78p(b).

The Shareholder's position is that the transactions are discretionary transactions as both parties to the transaction have discretion and in said transaction the insiders or officer's failed to deliver the cash under the Grant Agreement thus the Company therefore had discretion to withhold cash or stock, electing stock. The transactions at question are stock transactions based upon the Company's discretion as provided for in the Grant Agreement.

The District Court's Order states "DISMISSED with prejudice due to the fact that the transactions in question are compensation related and are designed to be exempt under Section 16b-3(e) of the Securities Exchange Act of 1934; 15 U.S.C. § 78p(b)" There is no Section 16b-3(e) of the Securities Exchange Act and

15 U.S.C. § 78p(b) is Section 16(b) of the Exchange Act rather than an exemption.

It is the Plaintiff/Appellant's position that the Order misstates the law and the

statute that the District Court's granting of the Motion to Dismiss was unwarranted

and that the case should be reversed with Judgment entered for the Plaintiff

Shareholder J.D. JORDAN or in the alternative the case should be reversed and

remanded for a trial on the merits.

## STATEMENT OF THE CASE

### A.  Course of Proceedings and Disposition in the Court Below

On November 9, 2016 Jordan filed suit alleging a violation of Section 16(b)

of the Exchange Act (ROA.7). Facts supporting the claim were set forth in the

original complaint (R.7-8). On February 21, 2017 the Defendants filed MOTION

to Dismiss *Pursuant to Federal Rule 12(B)(6) (*ROA.44). The Plaintiff responded

to the Motion to Dismiss on March 6, 2017. (ROA.232). The Defendants' filed

their Reply in Support of Motion to Dismiss *Pursuant to Federal Rule 12(B)(6)*

(ROA.248). On April 26, 2017 the District Court dismissed the Plaintiff's Petition

with prejudice pursuant  ORDER OF DISMISSAL Defendants' MOTION to

Dismiss *Pursuant to Federal Rule 12(B)(6)*(ROA.276). On May 17, 2017 Plaintiff/

Appellee Jordan filed his NOTICE OF APPEAL to US Court of Appeals for the

Fifth Circuit re: Order of Dismissal.(ROA.277)

## B. Statement of Facts

Plaintiff/Appellant Jordan is a shareholder in Dynegy Inc. and Defendants/
Appellees Robert Flexon, Mario Alonso, Catherine Callaway, Carolyn Burke, Clint
Freeland, Henry Jones were officers of Dynegy Inc. during all relevant periods. R.
48). Plaintiff alleges Defendant officers entered into non-exempt purchase and
sales within six months constituting short swing profits in violation of Section
16(b) (ROA.48).The District Court dismissed the cause of actions against the
defendants with prejudice  "due to the fact that the transactions in question were
compensation related and are designed to be exempt under Section 16 b-3(e) of the
Securities Exchange Act".

This cause of action is an enforcement of Section 16(b) of the Securities
Exchange Act of 1934. A Section 16(b) action is brought by a shareholder to
recover profits on behalf of the issuer from corporate insiders officers, directors or
beneficial owners of more then 10% of an outstanding class of stock of the
Company who have purchases and sales within a six month period.

A violation of 16(b) requires a purchase of non exempt equity securities
matched with non exempt sales (dispositions) of equity securities within less than 6
months by an insider (officer, director or shareholders who own over 10% of the
outstanding shares) at a profit regardless of the intent of such transaction. Such
profits are recoverable by the issuer.

All of the required elements of the violation of Section 16(b) are present for all defendants; (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six- month period (3) by a statutory insider.

The ABA and the NY State Bar Association have clearly expressed the view that it is irrelevant for section 16(b) purposes whether the transactions in question are compensation related or not. The SEC has adopted that view in the August 9, 2005 release. The transactions were market purchases and the sales (dispositions) to the issuer were for the payment of taxes in a discretionary transaction where the issuer chose to withhold shares rather then cash. The dispositions of shares in these transactions where the issuer used its discretion to withhold shares rather then cash can not be exempt.

The Ruling of the District Court stated that the transactions in question are designed to be exempt (from Section 16(b) under Section 16(b) 3(e) of the Securities Exchange Act of 1934, and the case was dismissed with prejudice. However, there is no Section 16 b-3(e) of the Securities Exchange Act of 1934. Since Section 16 b-3(e) of the Securities Act of 1934 does not exist it cannot be the basis for a case to be dismissed based on a conclusory interpretation based on facts which are not relevant and a non existent law.

**STANDARD OF REVIEW**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan* v. *American Bd. of Psychiatry and Neurology, Inc.* , 40 F. 3d 247, 251 (CA7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,see *Papasan* v. *Allain* , 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, *e.g* ., *Swierkiewicz* v. *Sorema N. A.*, 534 U. S. 506, 508 n. 1 (2002) ; *Neitzke* v. *Williams*, 490 U. S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a Judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes* , 416 U. S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

This Court reviews summary judgments *de novo*. *Berry v. Armstrong Rubber Co.*, 989 F.2d 822 (5th Cir. 1993), *cert denied*, 114 S.Ct. 1067 (1994). *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir. 1992). The party seeking summary judgment must demonstrate its entitlement to judgment as a matter of law and that no genuine issue of material fact exists by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving Party. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, S.Ct. 2513.

## SUMMARY OF THE ARGUMENT

This is an action brought by a shareholder against insiders/officers of the issuer Dynegy Inc under Section 16(b) of the Securities Exchange Act of 1934. The elements of a Section 16(b) claim are (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six- month period (3) by a statutory insider.

The District Court granted the insider/officers Motion to Dismiss under FRCP 12(b)6 "due to the fact that the transactions in question are compensation related and are designed to be exempt under Section 16b-3(e) of the Securities Exchange Act of 1934; 15 U.S.C. § 78p(b)" The limited and narrow factual statements fail as a matter of law to qualify for or as an exemption from Section 16(b) and cite a non-existent Section of the Securities Exchange Act. Whether the transaction is compensation related and whether its designed to be exempt both rely entirely and exclusively on factual determination which are not to be considered in proving a Section 16(b) action.

The only element that could be in dispute is whether or not the sale is non-exempt. The insider/officers contend that the Disposition(sale) is an exempt transaction or in the alternative that the disposition is not a "sale" under Section 16(b).

Whether the sale is non-exempt turns exclusively upon whether it is a discretionary transaction. The transaction and the underlying shares which are withheld pursuant to the "2012 LT1 Plan" which states "The company or issuer is authorized to withhold from "any cash *or* stock remuneration…."*emphasis added.* The Plan clearly gives the issuer discretion and therefore without question a discretionary transaction which would fail to qualify for an exemption under Rule 16(b)-3(e).(ROA.178 ¶7).

The Disposition is clearly a sale with the two factors controlling being whether 1) it was an involuntary transaction on behalf of the insider/officer and, 2) whether there was access to inside information. Under the "2012 LT1 Plan" the insider/officer had the option to deliver cash prior to the issuer having the option to withhold cash or stock. If the insider/officer wished to avoid having the shares withhold he had the option to deliver cash and thus this is not a involuntary transaction. In addition, it is beyond dispute the officers have had access to inside information during the purchase and sale. Therefore, the Dispositions are without a doubt sales under Section 16(b).

The case should be reversed and Judgment granted for the Plaintiff Shareholder Jordan, ordering the officers to disgorge the profits, awarding attorney fees and any other relief this Court deems necessary and proper.

## ARGUMENT

This is an action brought by J.D. Jordan a Shareholder of Dynegy, Inc. pursuant to Section 16(b) of the 1934 Securities and Exchange Act which states:

> **(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his**

> *relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, **shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction** of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.*
>
> *Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized.*
>
> ***This subsection shall not be construed to cover any*** *transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or **any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.***

Section 16(b) of the Securities Exchange Act of 1934; 15 U.S.C. § 78p(b)

The Shareholder, J.D. Jordan filed suit to enforce a private right of action against

officers under section 16(b), as the issuer, Dynegy, refuses to seek recovery of

profits from the insider officers based upon " ***the unfair use of information which*** ***may have been obtained by such beneficial owner, director, or officer by reason*** ***of his relationship to the issuer.*** " (ROA.7).

Section 16(a) requires directors, officers, and principal shareholders to disclose, subject to rules set forth by the SEC, their ownership holdings of equity securities of the company, and any changes thereto. 15 U.S.C. § 78p(a). Non-exempt transactions, and transactions exempt from Section 16(b) pursuant to Rule 16b-3(d) & (e), that result in a change in ownership of the company's equity securities by a director, officer or principal shareholder are required to be disclosed within two business days on an SEC Form 4, which is filed with the SEC under penalty of perjury. Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 133 (D. Conn. 2007), aff'd, 312 F. App'x 400 (2d Cir. 2009).

Set forth below are nonexempt market purchases and nonexempt sales/ disposition to the issuer, Dynegy by insider officers and directors. These insider officers are and were officers at the time of the sales and market purchases. The entry of a Code "F" in column 3 of Table 1 of the SEC Form 4 (ROA. 74) by defendants is a statement that the tax liability by delivery of shares to the issuer did not satisfy the approval requirements of Rule 16(b)-3(e) and thus it was not exempt from section 16 (b), as code "D" clearly sets forth that the transaction is exempt pursuant to Rule 16(b)-3(e).

**Dynegy Sales Transactions;**

**Robert Flexon**

| Shares Purchased | Date[2] | Price | Shares Disposed | Disposed Date | Price | Profit[3] |
|---|---|---|---|---|---|---|
| 10,000 | 3/1/16 | $10.08 | 10,000 | 10/29/15 | $19.46 | $93,800 |
| 9,081 | 3/1/16 | $10.08 | 9,081 | 3/18/16 | $13.41 | $30,239 |
| 3,180 | 11/13/15 | $16.70 | 3,180 | 10/29/15 | $19.46 | $8,776 |
| 8,000 | 8/12/15 | $22.91 | 8,000 | 3/18/15 | $28.84 | $47,440 |

| total profits | | | | | | $150,016 |
|---|---|---|---|---|---|---|

**Mario Alonso**

| Shares Purchased | Date | Price | Shares Disposed | Disposed Date | Price | Profit |
|---|---|---|---|---|---|---|
| 656 | 8/14/15 | $25 | 656 | 3/18/15 | $27.24 | $1,469 |
| 445 | 8/14/15 | $25 | 445 | 3/3/15 | $28.84 | $1,708 |

| total profits | | | | | | $3,177 |
|---|---|---|---|---|---|---|

**Catherine Callaway**

| Shares Purchased | Date | Price | Shares Disposed | Disposed Date | Price | Profit |
|---|---|---|---|---|---|---|
| 1,579 | 3/3/15 | $24.38 | 1,579 | 3/18/15 | $28.84 | $7,042 |
| 921 | 3/18/15 | $27.24 | 921 | 3/3/15 | $27.24 | $2,634 |

---

[2] Nonexempt purchases and nonexempt sales or dispositions were made within six months of each other.

[3] Profits were calculated as the difference between the non-exempt market purchases and the higher priced matched non-exempt dispositions or sales.

total profits            $9,676

**Jeanne Burke**

| Shares Purchased | Date | Price | Shares Disposed | Disposed Date | Price | Profit |
|---|---|---|---|---|---|---|
| 1,480 | 8/18/15 | $25.66 | 1,480 | 3/18/15 | $28.84 | $4,760 |
| 1,285 | 8/18/15 | $25.66 | 1,285 | 3/3/15 | $27.24 | $2,030 |

total profits            $6,790

**Clint Freeland**

| Shares Purchased | Date | Price | Shares Disposed | Disposed Date | Price | Profit |
|---|---|---|---|---|---|---|
| 2000 | 8/13/15 | $24.50 | 2,000 | 3/18/2015 | $28.84 | $8,680 |

Total Profit            $8,680

**Henry Jones**

| Shares Purchased | Date | Price | Shares Disposed | Disposed Date | Price | Profit |
|---|---|---|---|---|---|---|
| 3,000 | 8/18/15 | $25.90 | 3,000 | 4/1/2015 | $30.30 | $13,200 |

Total Profit            $13,200

Combine total profits[4] of all defendants        $191,539

---

[4]Profits were calculated as the difference between the non-exempt market purchases and the higher priced matched non-exempt dispositions or sales.

The issuer was notified of the violation of 16(b) and the issuer was requested to enforce section 16(b) more than 60 days prior to the suit being filed. The issuer Dyengy has refused to enforce Section 16(b). (ROA.72)

"To state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege: (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six- month period (3) by a statutory insider." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014) (citing Gwozdzinsky v. Zell/Chilmark Fund, L.P., 156 F.3d 305, 308 (2d Cir. 1998)); Sun River Energy, Inc. v. McMillan, 3:13-cv-2456-D, 2014 WL 4771852 at *6 (N.D. Tex. Sept. 25, 2014) (citing Gwozdzinsky, 156 F.3d at 308).

The parties agree that that there was a nonexempt purchase, a sale of a class of an issuer's (Dynegy) equity securities by the insider officers who are statutory insiders. (ROA.54)

The District Court granted the insider officers Motion to Dismiss pursuant to FRCP 12(b)(6) "due to the fact that the transactions in question are compensation related and are designed to be exempt under Section 16b-3(e) of the Securities Exchange Act of 1934; 15 U.S.C. § 78p(b)" The limited factual statements fail as a

matter of law to qualify for an exemption from Section 16(b) and cite a Section of the Securities Exchange Act which does not exist.

Whether the transaction is compensation related is irrelevant in an action under Section 16(b). Both the American Bar Association and the NY State Bar Association in letters to the SEC, which the SEC accepted and made reference to in the August 9, 2005 Release stated **that it is irrelevant whether the transactions were compensation related or not in cases where section 16(b) is being enforced.** *Emphasis Added.*

The American Bar Association in its August 16, 2004 letter to the SEC on Page 2 said:

**"Whether the transactions are compensatory in nature should be irrelevant to the purposes of Section 16**, because the key consideration of the statute is the absence of the ability to take advantage of the other party on the basis of inside information . "

The **New York State Bar Association in its August 9, 2004 letter to the SEC** on page 3.

> Rule 16b-3 is entirely consistent with the intent of Congress in enacting Section 16(b), since it exempts only transactions involving parties **on an equal footing** from the standpoint of knowledge of inside information.... **Given these circumstances,**

> **it is irrelevant to the purposes of Section 16(b) whether the transactions covered by the Rule are compensation-related or not. What is critical is that the Rule does not present the opportunities for the misuse of inside information, which the statute is intended to prevent.**

The question of whether the insiders' transactions were designed (i.e. intended) to be exempt is a question of fact which Shareholder Jordan denies. Even if it were true that the transactions were designed to be exempt from Section 16 (b), the transaction must not be comprehended within the purpose of 16(b) and the transaction must be approved with the required specificity and as this transaction is discretionary on behalf of the issuer thus is not exempt.

Whether the transactions are designed to be exempt is not relevant to a Section 16(b) which is a strict liability statute where strict liability is imposed irrespective of intent.

> In order to achieve its goals, Congress chose a relatively arbitrary rule capable of easy administration. **The objective standard of Section 16(b) imposes strict liability upon substantially all transactions occurring within the statutory time period, regardless of the intent of the insider or the existence of actual speculation.** This approach maximized the ability of the rule to eradicate speculative abuses by reducing difficulties in proof. Such arbitrary and sweeping coverage was deemed necessary to insure the optimum prophylactic effect.' Bershad v. McDonough, 428 F.2d 693

As the sole factual support the District Court relies upon fails to support an exemption and has been specifically excluded from a defense to a Section 16(b) action and the reliance on a section of law that doesn't exist necessitates a reversal of the District Court's ruling. (ROA. 276)

The only remaining issues that can be in dispute are whether the transaction is exempt or in the alternative that the disposition is not a sale. The insider officers claim the transaction is exempt under Section 16(b)-3(e) (ROA 54) FRCP 12(b)6. The insider officers also rely upon a Section of the Securities Exchange Act of 1934 that doesn't exist. (ROA 54)

The insider officers later assert that the transactions qualified for an exemption pursuant to Rule 16(b)-3(e). However, the record clearly shows that the transactions do not qualify for an exemption. (ROA. 57)

Each insider officer filed his or her Form 4 and do not claim their Disposition qualified for an exemption pursuant to Rule 16b-3(e) by selecting option D - "Disposition to the issuer of issuer equity securities pursuant to Rule 16b-3(e)." On their Form 4 each and every insider officer relies on an exemption under Rule 16b-3 instead of 16b-3(e) by selecting option F which states "F - Payment of exercise price or tax liability by delivering or withholding securities

incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3" (ROA.74).

In addition to their admission on Form 4 that the transaction is not exempt pursuant to Rule 16(b)-3(e) the plain language of the transaction shows that this is a discretionary transaction which will not qualify for an exemption. The transaction consists of a market purchase which is not disputed as nonexempt (ROA.56) and sale (disposition), which the under officers claim qualifies for an exemption under Section16(b)-3(e) and later Rule Section 16(b)-3(e). They support their position that the sale is exempt with conclusory statements that the shareholders claims are meritless, distractions such as an attempt to draw a negative inference from other Section 16(b) litigation involving the Shareholder and an attempt to turn a demand letter into an attempt to extract fees. (ROA. 51) This is done to avoid the clear conclusion that when plain language of the long term incentive plan "2012 LT1 Plan" or "Dynegy Grant Agreement" is applied, the insider officers market purchases and Dispositions to the issuer are discretionary transactions which do not qualify for an exemption.(ROA.178 ¶7).

The company or issuer is authorized to withhold from "any cash *or* stock remuneration....."*emphasis added.* The Plan gives the issuer discretion, as this is clearly a discretionary transaction which would not qualify for an exemption under Rule 16(b)-3(e).(ROA.178 ¶7).

The United States Securities and Exchange Commission ("SEC") agrees

with this position in a published telephone opinion they state:

49. **** Rule 16b-3(e), Note 3; Rule 16b-3(d) ****
Approval of a grant which by its terms provides for automatic reloads would
satisfy specificity of approval requirements under Rule 16b-3(d) for the reload
grants, **unless** *the automatic reload feature permitted the reload grants to be
withheld by the issuer on a discretionary basis*. The same result applies under Rule
16b-3(e) where the automatic feature is a tax- or exercise- withholding
right. *Emphasis Added.*

SEC Division of Corporation Finance
Manual of Publicly Available Telephone Interpretations
R. SECTION 16 RULES AND FORMS 3, 4 AND 5

**SEC Rule 16 b-3(e) and Note (3) are below**

**(e)** *Dispositions to the issuer.* Any transaction, other than a Discretionary
Transaction, involving the disposition to the issuer of issuer equity securities,
whether or not intended for a compensatory or other particular purpose, shall be
exempt, provided that the terms of such disposition are approved in advance in the
manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

In *Gollust v. Mendell*, 501 U.S. 115, 127 the U.S. Supreme Court said:

> To enforce this strict liability rule on insider trading,
> Congress chose to rely solely on the issuers of stock and
> their security holders. **Unlike most of the federal
> securities laws, § 16(b) does not confer enforcement
> authority on the Securities and Exchange Commission.
> It is, rather, the security holders of an issuer who have
> the ultimate authority to sue for enforcement of
> §16(b).** If the issuer declines to bring a § 16(b) action
> within 60 days of a demand by a security holder, or fails
> to prosecute the action "diligently," 15 U.S.C. § 78p(b),
> then the security holder may "institut[e]" an action to
> recover insider short-swing profits for the issuer. *Ibid.*

Since 1934 the federal courts have applied 16(b) as a "crude rule of thumb," imposing strict liability based upon objective standards in order to cover the evil with the "optimum prophylactic effect." Upon proof of any set of transactions by an insider within six months, which in some way resembled a "purchase" and "sale," the courts would conclusively presume an abuse of his position and automatically hold him liable.[5]

Discretionary transactions are exempt only if effected pursuant to an election that was made at least six months after a prior election triggering an opposite-way discretionary transaction made under any plan or arrangement. *SEC ADOPTS A RADICALLY DIFFERENT RULE 16b-3 FW Cook,* August 2, 1996.

The insider officers also contend that the Dispositions are not 'sales" as claiming these transactions are involuntary transactions. When a corporate insider engages in an "involuntary transaction ... having no access to inside information," Section 16(b) does not apply because such a transaction does not create the potential for speculative abuse. At Home Corp. v. Cox Commc'ns, Inc., 446 F.3d 403, 408 (2d Cir. 2006).

---

[5]The two leading cases illustrating this approach are Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943), cert. denied, 320 U.S. 751 (1943), and Park & Tilford, Inc. v. Schulte, 160 F.2d 984 (2d Cir. 1947), cert. denied, 332 U.S. 761 (1947). Munter, Section 16(b) of the Securities Exchange Act of 1934: An Alternative to 'Burning Down the Barn in Order to Kill the Rats', 52 CORNELL L.Q. 69 (1966). Bershad v. McDonough, 428 F.2d 693, 696 (7th Cir. 1970), cert. denied, 400 U.S. 992 (1971). See also Heli-Coil Corp. v. Webster, 352 F.2d 156 (3d Cir. 1965).

This argument fails as the transactions are not involuntary transactions where the insiders have no access to inside information. The corporate insiders had an option to first deliver cash under the Plan (ROA.178 ¶7). before the issuer has the option to withhold shares. As the insider officer has an option this is not an involuntary transaction. In addition, the insider officers had access to inside information during the purchase and when they made a decision to sell those shares by not delivering has under the plan but to withhold the shares at a price higher then they purchased them for within the previous six months. This is precisely what Section 16(b) was designed to prevent.

For example, foregoing the delivery of a portion of shares acquired upon the exercise of a stock option to settle tax withholding requirements constitutes a "sale." *SEC ADOPTS A RADICALLY DIFFERENT RULE 16b-3* FW COOK August 2, 1996.

The Dispositions are not involuntary transactions as the insider director has the option to deliver cash prior to the issuer having the opportunity to withhold shares. Furthermore, the insider officers have access to inside information and when matched with market purchases made within six months this is exactly what Congress sought to prevent short swing profits made on inside information.

## CONCLUSION

The District Court granted the insider officers Motion to Dismiss Pursuant to FRCP 12(b)6 relying upon and citing a Section of the Securities Act which doesn't exist the sole factual support was that the transaction was compensation related which as a matter of law is irrelevant and cannot support a dismissal and the corporate insiders intent is drafting or designing the transaction which also has no bearing on the strict liability Section 16(b).

The only issues which were not in the Order that the corporate insiders have disputed are whether the transaction is exempt under Rule 16(b)-3(e). Whether the transaction is exempt turns on whether it is a discretionary transaction. The plain language of the long term incentive plan "2012 LT1 Plan" or the Dynegy Grant Agreement shows these are discretionary transactions which do not qualify for an exemption.

The Plan states "The company or issuer is authorized to withhold from "any cash *or* stock remuneration…."*emphasis added*. The Plan gives the issuer discretion, as this is clearly a discretionary transaction which would not qualify for an exemption under Rule 16(b)-3(e).

The only issue that could be in dispute is whether the Dispositions were "sales" under Section 16(b). In order to be sales they must be involuntary

transactions made by corporate insiders or officers who do not have access to inside information.

The 2012 LT1 Plan allows the insider or officer the option to deliver cash before the the issuer has the option to withhold shares, this option for the insider shows that this is not an involuntary transaction. Furthermore, the officers had access to inside information during the purchase and the sale thus it is clear that the Dispositions are sales under Section 16(b).

WHEREFORE, the Plaintiff Appellant Shareholder J.D. Jordan respectfully requests that this Court reverse the District Court's Order of Dismissal with Prejudice and as the Disposition/Sales in these transactions are nonexempt and there are matching purchases within the prohibited six month period order the Defendants to disgorge their wrongful profits pursuant to Section 16(b) in an amount of $191, 539, award attorney fees and any other relief this Court deems necessary and proper.

Respectfully Submitted,

J.D Jordan, Pro Se
Box 23866
New Orleans Louisiana 70183
504-737-3854

**Certificate of Service**

I hereby certify that on the 12th day of July, 2017 a physical copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by physical delivery to the Fifth Circuit.

**CERTIFICATE OF COMPLIANCE**
Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).
1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2.7(b)(3), THE BRIEF CONTAINS 12,647 words; the Brief is left-justified only.
2. THIS BRIEF HAS BEEN PREPARED in monospace typeface using WordPerfect 5.1; Times New Roman, 14 point.
3. IF THE COURT SO REQUESTS, THE UNDERSIGNED WILL PROVIDE AN ELECTRONIC VERSION OF THE BRIEF AND/OR A COPY OF THE WORD OR LINE PRINTOUT.
4. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN 5th Cir. R. 32.2.7, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

J.D. Jordan