No. 17-20346

# In the

# United States Court of Appeals

# for the Fifth Circuit

———————————————

J. D. JORDAN,

*Plaintiff-Appellant,*

v.

ROBERT C. FLEXTON, President and Chief Executive Officer;
MARION ALONSO, Executive Vice President; CATHERINE
CALLAWAY, Executive Vice President & General Counsel;
JEANNE BURKE, Executive Vice President; CLINT FREELAND,
Executive Vice President and Chief Financial Officer;
HENRY JONES, Executive Vice President,

*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court for the
Southern District of Texas: Civil Action No. 4:16-CV-03316

———————————————

## BRIEF OF APPELLEES ROBERT FLEXON, MARIO ALONSO, CATHERINE CALLAWAY JAMES, CAROLYN BURKE, CLINT FREELAND, AND HENRY JONES

———————————————

Joseph A. Fischer
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 (Fax)
Email: tfischer@jw.com

Jay K. Wieser
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
(817) 334-7200
(817) 334-7290 (Fax)
Email: jwieser@jw.com

COUNSEL FOR DEFENDANTS-APPELLEES

No. 17-20346

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

J. D. JORDAN,

*Plaintiff-Appellant,*

v.

ROBERT C. FLEXTON, President and Chief Executive Officer;
MARION ALONSO, Executive Vice President; CATHERINE
CALLAWAY, Executive Vice President & General Counsel;
JEANNE BURKE, Executive Vice President; CLINT FREELAND,
Executive Vice President and Chief Financial Officer;
HENRY JONES, Executive Vice President,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Southern District of Texas: Civil Action No. 4:16-CV-03316

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following

listed persons and entities as described in the fourth sentence of Rule

28.2.1 have an interest in the outcome of the case. These

i

representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal:

## Plaintiff/Appellant

1.    J. D. Jordan, *Pro Se*

## Counsel for Plaintiff/Appellant

None.

## Defendants/Appellees

1.    Robert Flexon;[1]
2.    Mario Alonso;[2]
3.    Catherine Callaway James;[3]
4.    Carolyn Burke;[4]
5.    Clint Freeland;
6.    Henry Jones; and
7.    Dynegy Inc., a publicly traded Delaware corporation traded on the New York Stock Exchange under the ticker "DYN."

## Counsel for Defendants/Appellees

Joseph A. Fischer, III
Texas Bar No. 00789292
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
[Tel.] (713) 752-4200
[Fax] (713) 752-4221

---

[1] Appellant misspells Mr. Flexon's name as "Flexton."

[2] Appellant misspells Mr. Alonso's first name as "Marion."

[3] Appellant omits Mrs. James's married surname.

[4] Appellant misnames Ms. Burke as "Jeanne."

Jay K. Wieser
Texas Bar No. 24060826
JACKSON WALKER L.L.P.
777 Main Street, Suite 2100
Fort Worth, TX 76102
[Tel.] (817) 334-7200
[Fax] (817) 334-7290

*/s/ Jay K. Wieser*
Jay K. Wieser
Counsel for Defendants–Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal involves the application of straight-forward exemptions to Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b), oral argument is unnecessary to aid the Court's decisional process. Respectfully, oral argument also is unnecessary because the appeal is frivolous and the dispositive issue has been authoritatively decided.

TABLE OF CONTENTS

Statement Regarding Oral Argument ...................................................... iv

Table of Contents .............................................................................. v

Table of Authorities........................................................................... vi

Issues Presented................................................................................ 5

Statement of the Case ......................................................................... 5

    I.    The "Short-Swing" Profit Rule. ................................................... 5

    II.   The Dynegy Equity Compensation Awards and Approvals. ......... 7

    III.  The Dispositions Were Approved Tax Withholdings. .................. 9

    IV.  The District Court Grants the Officers' Rule 12(b)(6) Motion and Dismisses Jordan's Suit. ........................................................... 12

        A.    The Officers' Dismissal Motion. ...................................... 12

        B.    The district court dismisses Jordan's suit. .............................. 13

Summary of the Argument .................................................................. 13

Standard of Review ........................................................................... 15

Argument ......................................................................................... 16

    I.    The District Court correctly held that the Dispositions by the Officers were exempt from Section 16(b). ..................................... 16

        A.    The Dispositions to Dynegy to pay tax obligations are exempt under Rule 16b-3(e) because they were pre-approved, authorized Dispositions to the issuer. ..................................... 17

        B.    Specific approval of each of the Dispositions was not required because the Board Committee previously approved the SUA Agreements and Dynegy's stockholders approved the 2012 LTI Plan. ......................................................................... 20

        C.    The Dispositions were not "Discretionary Transactions." ...... 22

        D.    The typographical error in the district court's order granting the Officers' Motion to Dismiss is harmless. ........................... 25

    II.   The Dispositions Are Not "Sales" Under Section 16(b). ............. 26

CONCLUSION ................................................................................ 29

TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................... 15

*At Home Corp. v. Cox Commc'ns, Inc.,*
   446 F.3d 403 (2d Cir. 2006) ...................................................... 28

*Beavers v. Metro. Life Ins. Co.,*
   566 F.3d 436 (5th Cir. 2009) ..................................................... 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................. 15, 16

*Crosby v. Pac. S.S. Lines,*
   133 F.2d 470 (9th Cir. 1943) ..................................................... 26

*Donoghue v. Casual Male Retail Grp., Inc.,*
   427 F. Supp. 2d 350 (S.D.N.Y. 2006) ...................................... 21

*Donoghue v. Patterson Companies, Inc.,*
   990 F. Supp. 2d 421 (S.D.N.Y. 2013) ...................................... 17

*Dorsey v. Portfolio Equities, Inc.,*
   540 F.3d 333 (5th Cir. 2008) ..................................................... 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
   986 F. Supp. 2d 544 (S.D.N.Y. 2014) ...................................... 16

*Fernandez–Montes v. Allied Pilots Ass'n,*
   987 F.2d 278 (5th Cir. 1993) ..................................................... 16

*Foremost-McKesson, Inc. v. Provident Sec. Co.,*
   423 U.S. 232 (1976) ..................................................................... 27

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.,*
   156 F.3d 305 (2d Cir. 1998) ................................................ 16, 17

*Hamilton v. Stillwell Van & Storage Co.*,
    343 F.2d 453 (3d Cir. 1965) ............................................................ 26

*Kern Cnty. Land Co. v. Occidental Petroleum Corp.*,
    411 U.S. 582 (1973) ............................................... 14, 26, 27

*Levy v. Sterling Holding Co., LLC*,
    544 F.3d 493 (3d Cir. 2008) ............................................................ 27

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x
    400 (2d Cir. 2009) ...................................................................... 7

*Mercer v. Gupta*,
    712 F.3d 756 (2d Cir. 2013) ............................................................ 27

*Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp.
PLC*,
    298 F.3d 136 (2d Cir. 2002) ............................................................ 19

*Klein ex rel. SICOR, Inc. v. Salvi*,
    No. 02-CV-1862, 2004 WL 596109 (S.D.N.Y. Mar. 30,
    2004), *aff'd sub nom.*, *Klein v. Salvi*, 115 F. App'x 515 (2d
    Cir. 2004).............................................................................. 2

*Pinnacle West Capital Corp.*, SEC No–Action Letter,
    1992 WL 59852, at *3, *9 (Mar. 25, 1992).............................. 22

*Roth ex rel. Beacon Power Corp.*,
    522 F.3d 242, 249 (2d Cir. 2008) .................................................. 29

*Sun River Energy, Inc. v. McMillan*,
    3:13-cv-2456-D, 2014 WL 4771852 (N.D. Tex. Sept. 25,
    2014).................................................................................. 16

*Tex. Commercial Energy v. TXU Energy, Inc.*,
    413 F.3d 503 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1033
    (2006)............................................................................. 10, 23

*In re U.S. Healthcare, Inc.*,
    193 F.3d 151 (3d Cir. 1999) ............................................................ 26

## Statutes

15 U.S.C. § 78p(a) .................................................................. 6

15 U.S.C. § 78p(b) ....................................................... *passim*

§ 16(a) of the Securities Exchange Act ..................................... 6

§ 16(b) of the Securities Exchange Act of 1934............................. *passim*

## Rules

Fifth Circuit Rule 25.2.1 ...................................................... 30

Fifth Circuit Rule 25.2.13 .................................................... 30

FED. R. APP. P. 32(a)(5).......................................................... 31

FED. R. APP. P. 32(a)(6).......................................................... 31

FED. R. APP. P. 32(a)(7)(B)...................................................... 31

FED. R. APP. P. 32(a)(7)(B)(iii) ................................................ 31

Rule 12(b)(6) ........................................................ 4, 12, 13, 15

Rule 16b-3.......................................................................... 14

Rule 16(b)-3(e) ................................................................... 10

Rule 16b–3........................................................................... 21

Rule 16b–3(c)(2)(ii) ............................................................. 22

Rule 16b-3.............................................................. *passim*

Rule 16b-3(d) & (e) ......................................................... 7, 9

Rule 16b-3(e)............................................................. *passim*

## Regulations

17 C.F.R. § 240.16b-3 .............................................................. 3

17 C.F.R. § 240.16b-3(a) ................................................................. 6

17 C.F.R. § 240.16b-3(b) ............................................................... 24

17 C.F.R. § 240.16b-3(b)(iv) ......................................................... 24

17 C.F.R. §§ 240.16b-3(d) & (e) ...................................... 6, 17, 18

17 C.F.R. § 240.16b-3(e) .................................................................. 4

17 C.F.R. § 240.16b-3 n.3 ........................................... *passim*

61 Fed. Reg. 30376-01 ................................................................. 18

## Other Authorities

Ownership Reports and Trading by Officers, Directors and
    Principal Security Holders, Exchange Act Release Nos.
    34-37260, 35-26524 ............................................................. 18

No. 17-20346

# In the
# United States Court of Appeals
# for the Fifth Circuit

———————————————

J. D. JORDAN,
*Plaintiff-Appellant,*

v.

ROBERT C. FLEXTON, President and Chief Executive Officer;
MARION ALONSO, Executive Vice President; CATHERINE
CALLAWAY, Executive Vice President & General Counsel;
JEANNE BURKE, Executive Vice President; CLINT FREELAND,
Executive Vice President and Chief Financial Officer;
HENRY JONES, Executive Vice President,
*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court for the
Southern District of Texas: Civil Action No. 4:16-CV-03316

———————————————

## BRIEF OF APPELLEES ROBERT FLEXON, MARIO ALONSO, CATHERINE CALLAWAY JAMES, CAROLYN BURKE, CLINT FREELAND, AND HENRY JONES

———————————————

TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:

Defendants-Appellees Robert Flexon, Mario Alonso, Catherine

Callaway James, Carolyn Burke, Clint Freeland, and Henry Jones

(collectively, the "Officers") were sued by Plaintiff-Appellant J. D.

1

Jordan ("Jordan"), a purported stockholder of Dynegy Inc. ("Dynegy").[5]

Jordan asserted that the Officers earned profits from routine equity

compensation transactions that Jordan alleged were "short-swing" sales

under Section 16(b) of the Securities Exchange Act of 1934, as amended

(the "Exchange Act"), 15 U.S.C. § 78p(b) ("Section 16(b)"). Based on odd,

incorrect arguments that are contrary to the plain language of the

applicable rules and regulations of the Securities and Exchange

Commission (the "SEC"), Jordan sought to recover $191,539 in so-called

"short-swing insider trading profits" allegedly realized by the Officers.[6]

Aimed at preventing unfair use of inside information, Section

16(b) requires that profits realized by a director, officer, or principal

stockholder of a company from any purchase and sale, or any sale and

purchase, of that company's equity securities within a period of less

than six months be disgorged to the company. 15 U.S.C. § 78p(b). The

---

[5] Dynegy originally was a defendant in the lawsuit and included as a movant in Defendants' Motion to Dismiss. ROA.48. However, Jordan voluntarily dismissed his claims against Dynegy on April 3, 2017, before the district court granted Defendants' Motion to Dismiss. ROA.273.

[6] Before filing his Complaint, Jordan, who is not a lawyer, improperly attempted to extract a $20,000 "consulting fee" from Dynegy for his own personal gain in exchange for not proceeding with the lawsuit. ROA.71–72. But "[s]uccessful plaintiffs in section 16(b) suits are not personally entitled to receive any portion of the recovered damages." *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02-CV-1862, 2004 WL 596109, at *1 (S.D.N.Y. Mar. 30, 2004), *aff'd sub nom.*, *Klein v. Salvi*, 115 F. App'x 515 (2d Cir. 2004).

SEC, however, exempts categories of transactions that it determined do not provide an opportunity for speculative abuse. For example, Rule 16b-3 provides that Section 16(b) does not apply to transactions in which a director or officer acquires equity securities from the company, or disposes of equity securities to the company, because neither the company nor the director or officer is considered to be at an information disadvantage. *See* 17 C.F.R. § 240.16b-3.

In the district court, Jordan complained about transactions carried out solely between the Officers and Dynegy. Jordan alleged that dispositions of Dynegy restricted stock units the Officers made to Dynegy to cover tax withholding liability in connection with stock grants they received under equity compensation stock grants (the "Dispositions") constituted "sales" subject to Section 16(b). Next, Jordan attempted to "match" the Dispositions to other purchases and alleged that, in combination, the Officers realized profits that are required to be disgorged under Section 16(b). However, not only did the Dispositions not involve an opportunity for the type of speculative abuse that Section 16(b) was meant to prevent, the Dispositions expressly are exempt from

Section 16(b) under the plain language of Rule 16b-3(e). *See* 17 C.F.R. § 240.16b-3(e).

On the Officers' motion, the district court properly granted dismissal under Rule 12(b)(6). The district court recognized that the SEC expressly has exempted transactions of the kind that form the basis of Jordan's claims from Section 16(b), finding that "the transactions in question are compensation related and are designed to be exempt." ROA.276. Jordan now suggests that the district court's decision is both incorrect and implicates complex issues for this Court's review. Not so. Jordan's allegations and claims are meritless, and the district court properly dismissed the Complaint because Jordan has failed to state a claim that the Officers' dispositions of Dynegy stock were non-exempt "sales" within the scope of Section 16(b).

ISSUES PRESENTED

1.     Did the district court correctly hold that the transactions in question are exempt from Section 16(b) of the Securities Exchange Act?

2.     Are the transactions in question "sales" under Section 16(b) of the Securities Exchange Act where they did not create any plausible opportunity for abusive trading?

STATEMENT OF THE CASE

## I.     The "Short-Swing" Profit Rule.

Section 16(b) of the Exchange Act requires that directors, officers and principal stockholders (*i.e.*, corporate insiders) who realize profits "from any purchase and sale, or any sale and purchase, of any equity security" of their own company (*i.e.*, the issuer) within a period of less than six months must disgorge those profits to the company. 15 U.S.C. § 78p(b). The purpose of this "short-swing" profit rule is to "prevent[] the unfair use of information which may have been obtained by [corporate insiders] by reason of [their] relationship to the issuer." *Id.* Congress granted the SEC authority to exempt from the statute's restriction "any transaction or transactions" that the SEC deems to be "not comprehended within the purpose of this subsection." 15 U.S.C. § 78p(b).

5

Pursuant to that authority, the SEC promulgated Rule 16b-3 to exempt any "transaction between the issuer . . . and an officer or director of the issuer that involves issuer equity securities," as long as certain conditions are met. 17 C.F.R. § 240.16b-3(a). Specifically, a disposition of equity securities to the issuer is exempt as long as the terms of the disposition are approved in advance by the issuer's board of directors, a committee of the board, or by a majority of stockholders. 17 C.F.R. §§ 240.16b-3(d) & (e). Under Rule 16b-3, that approval can come in the form of approval of either "each specific transaction" or "a plan pursuant to which the terms and conditions of each transaction are fixed in advance." 17 C.F.R. § 240.16b-3 n.3.[7]

Section 16(a) of the Exchange Act requires directors, officers, and principal stockholders to report, subject to rules set forth by the SEC, their ownership, and any changes in their beneficial ownership, of equity securities of the company. 15 U.S.C. § 78p(a). In that regard,

---

[7] The full text of Note 3 to Rule 16b-3 provides: "The approval conditions of paragraphs (d)(1), (d)(2) and (e) of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety *except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance*, such as a formula plan. *Where the terms of a subsequent transaction (such as the* exercise price of an option, or *the provision of an* exercise or *tax withholding right*) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), *such subsequent transaction shall not require further specific approval*." 17 C.F.R. § 240.16b-3 n.3 (emphasis added).

6

both non-exempt transactions and transactions exempt from Section 16(b) pursuant to Rule 16b-3(d) & (e), that result in a change in ownership of the company's equity securities by a director, officer or principal stockholder are required to be reported within two business days on an SEC Form 4, which is filed with the SEC under penalty of perjury. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 133 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009). The nature of each transaction reportable on a Form 4 filing is disclosed using standard transaction codes established by the SEC. For example, transaction code "F" means "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security issued in accordance with Rule 16b-3."[8] ROA.79.

## II.    The Dynegy Equity Compensation Awards and Approvals.

On its emergence from Chapter 11 bankruptcy in 2012, Dynegy enacted a long term incentive compensation plan (the "2012 LTI Plan"). ROA.81–105. Dynegy's stockholders approved the 2012 LTI Plan on

---

[8] Indeed, that this code even exists underscores the noncontroversial nature of the Dispositions and their exemption; thousands of like transactions occur every day involving nearly every, if not every, publically-traded company in America. Jordan essentially argues that every publically-traded company in America has this wrong.

September 10, 2012,[9] authorizing granting restricted stock unit awards and other forms of equity compensation transactions to Dynegy employees and directors. ROA.81. The 2012 LTI Plan approved by Dynegy's stockholders further authorized Dynegy to "deduct in connection with all Awards any taxes required by law to be withheld and to require any payments required to enable it to satisfy its withholding obligations." ROA.101.

Pursuant to the 2012 LTI Plan, the Compensation and Human Resources Committee (the "Board Committee") of Dynegy's Board of Directors (the "Board") granted the Officers equity compensation in the form of restricted stock unit awards (the "RSU Awards"). ROA.65. The terms and conditions of the RSU Awards are set forth in individual stock unit award agreements (the "SUA Agreements"), which were approved by the Board Committee annually and filed with the SEC. ROA.65, 176–181, 183–194. Each restricted stock unit represents a contingent right to receive one share of Dynegy common stock, and the

---

[9] Dynegy's Joint Plan of Reorganization was confirmed by the United States Bankruptcy Court for the Southern District of New York on September 10, 2012. ROA.107–174. The confirmation of Dynegy's Joint Plan of Reorganization "constitute[d] all necessary approval" by Dynegy's stockholders of the 2012 LTI Plan. ROA.87.

restricted stock units generally vest ratably over the first, second, and third anniversary of the respective grant date. ROA.176–178. With respect to the withholding of taxes, the SUA Agreements provide that the employee shall deliver money to Dynegy to meet the withholding requirements, "and if the Employee fails to do so, [Dynegy] is authorized to withhold from any cash or stock remuneration (including withholding any Stock Units distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income." ROA.178.

## III.   The Dispositions Were Approved Tax Withholdings.

The Dispositions of Dynegy stock about which Jordan complains all arose from Dynegy's withholding of restricted stock units to pay the taxes applicable to the vesting of restricted stock units pursuant to the 2012 Plan and the SUA Agreements, which were approved—as required by Rules 16b-3(d) & (e)—by Dynegy's stockholders and the Board Committee, respectively. ROA.64–65.

For example, Jordan's Complaint identified three dispositions of stock made by Dynegy's CEO, Mr. Flexon: (1) a March 18, 2015

disposition of 8,000 restricted stock units; (2) an October 29, 2015 disposition of 13,108 restricted stock units; and (3) a March 18, 2016 disposition of 9,081 restricted stock units. Jordan then asserted that these transactions were not properly approved or exempted from Section 16(b). ROA.8, 10. However, each of these transactions were exempt from Section 16(b) by the plain language of Rule 16b-3(e).

In each instance, the dispositions were reported on a Form 4 filed with the SEC designated as a "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise, or vesting of a security issued in accordance with Rule 16b-3," using transaction code "F."[10] ROA.196, 199, 202. The same Form 4s also provided additional detail regarding the dispositions. Specifically, the Form 4 filed in connection with the March 18, 2015 disposition explains

[10] For the first time on appeal, Jordan confusingly argues—without authority—that, by using transaction code "F" on the Form 4s, the Officers have somehow admitted that the transactions are "not exempt pursuant to Rule 16(b)-3(e) . . . ." Appellant's Br. at 18, 25. Not so. As expressly indicated on those filings, the Dispositions constituted the "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise, or vesting of a security issued in accordance with Rule 16b-3," an SEC exemption to Section 16(b). Indeed, the only reasonable inference from the SEC filings on which Jordan relies is that the Dispositions were routine pre-approved transactions between the Officers and Dynegy arising from equity compensation awards and thus exempt under Rule 16b-3, which, obviously, includes subsection 16b-3(e). And, in any event, arguments not raised before the district court are waived and cannot be raised for the first time on appeal. *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1033 (2006).

that the "restricted stock units were withheld by Issuer [Dynegy] to pay the taxes applicable to the vesting of 21,645 units of restricted stock on March 18, 2015." ROA.197. The Form 4 filed in connection with the October 29, 2015 disposition similarly explains that "[t]hese restricted stock units were withheld by the issuer to pay the taxes applicable to the vesting of 35,093 units of restricted stock on October 29, 2015." ROA.200. And the Form 4 filed in connection with the March 18, 2016 disposition explains that "[t]hese restricted stock units were withheld by the Issuer to pay the taxes applicable to the vesting of 21,645 units of restricted stock on March 18, 2016." ROA.203. In each transaction, the disposition price of the restricted stock units withheld for tax withholding reflected the Dynegy stock price on the date the units vested, and the Officers had no discretion to determine the timing of the vesting or the price of the stock units withheld. ROA.196–197, 199–200, 202–203.

The same is true for the other Dispositions identified in Jordan's Complaint with respect to the other Defendants: Mr. Alonso, Mrs. James (Callaway), Ms. Burke, Mr. Freeland, and Mr. Jones. ROA.65, 205–206, 208–209, 211–212, 214–215, 217–218, 220–221, 223–224, 226–

227. That is, the Form 4s filed in connection with each of the dispositions identified in the Complaint for those Officers bore the transaction code "F" (meaning that they were the payment of tax liability incident to the vesting of a security issued in accordance with Rule 16b-3), and further stated that the restricted stock units disposed of were withheld by Dynegy to pay the taxes applicable to the vesting of restricted stock.

## IV. The District Court Grants the Officers' Rule 12(b)(6) Motion and Dismisses Jordan's Suit.

### A.    The Officers' Dismissal Motion.

The Officers moved to dismiss Jordan's suit in its entirety under Federal Rule of Civil Procedure 12(b)(6). ROA.44. The Officers explained that the Dispositions were exempt from Section 16(b), and that the Dispositions were pre-approved and carried out as part of routine equity compensation transactions with Dynegy. ROA.48–62. For these reasons, the Officers argued that Jordan failed to state a claim on which relief may be granted. ROA.62.

Jordan, on the other hand, argued that "[t]here was no advance approval of any specific transaction,"[11] and that "[t]here were no exemptions from Section 16(b) for any of the purchases or sales." ROA.245.

## B.   The district court dismisses Jordan's suit.

The district court agreed with the Officers that Jordan failed to state a claim on which relief may be granted and dismissed Jordan's claims with prejudice under Rule 12(b)(6). The district court also correctly explained that "the transactions in question are compensation related and are designed to be exempt under Section 16b-3(e) of the Securities Exchange Act of 1934; 15 U.S.C. § 78p(b)." ROA.276. This appeal followed. ROA.277.

## SUMMARY OF THE ARGUMENT

Jordan's claim that the Officers' tax-withholding dispositions were improper "short-swing" sales under Section 16(b) is meritless. The district court properly dismissed Jordan's lawsuit because the

---

[11] Thus, the gravamen of the parties' dispute is whether each of the Distributions had to be specifically approved or whether it is sufficient for the Plan and Awards that provided for the Distributions to be approved. Jordan's position is incorrect (and frivolous) because, under Rule 16b-3, an issuer such as Dynegy is free to approve through its stockholders, board of directors, or a committee of the board, either "each specific transaction" or "a plan pursuant to which the terms and conditions of each transaction are fixed in advance." 17 C.F.R. § 240.16b-3 n.3.

dispositions in question are exempt from Section 16(b) under SEC promulgated Rule 16b-3. Specifically, a disposition of equity securities to the issuer is exempt as long as the terms of the disposition are approved in advance by the issuer's board of directors, a committee of the board, or by a majority of stockholders, which is exactly what happened here. The Dispositions arose from Dynegy's withholding of restricted stock units to pay the taxes applicable to the vesting of restricted stock units pursuant to the 2012 LTI Plan and the SUA Agreements, which were approved by Dynegy's stockholders and the Board Committee, respectively. Accordingly those Dispositions expressly are exempt from Section 16(b) under Rule 16b-3(e).

Additionally, even if the Dispositions did not fall squarely within the exemption of Rule 16b-3(e), which they do, the Dispositions would not constitute "sales" for Section 16(b) purposes because they were not the type of transactions that "may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 594-95 (1973). Here, the Dispositions were made following the terms of equity compensation

agreements that the Board Committee—not the Officers—determined and approved in advance.

## STANDARD OF REVIEW

The district court dismissed Jordan's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, this Court will review the district court's ruling *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted).

To prevail against a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although a complaint "does not need detailed factual

allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted). Likewise, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)).

ARGUMENT

## I.     The District Court correctly held that the Dispositions by the Officers were exempt from Section 16(b).

"To state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege: (1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's securities (2) within a six-month period (3) by a statutory insider." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014) (citing *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)); *Sun River Energy, Inc. v. McMillan*, 3:13-cv-2456-D, 2014 WL 4771852 at *6 (N.D. Tex. Sept. 25, 2014) (citing *Gwozdzinsky*, 156 F.3d at 308). Thus, "[t]o plead a plausible claim for a violation of Section

16

16(b), plaintiff must plead facts sufficient to show that there is the purchase and sale (or sale and purchase) of a security not otherwise exempt from Section 16(b)." *Donoghue v. Patterson Companies, Inc.*, 990 F. Supp. 2d 421, 424 (S.D.N.Y. 2013) (citing *Gwozdzinsky*, 156 F.3d at 308-09); *see also* 15 U.S.C. § 78p(b) ("[Section 16(b)] shall not be construed to cover any transaction . . . which the [SEC] shall by rules and regulations [] exempt.").

Jordan failed to state a claim under Section 16(b). Although dispositions were made within six months of purchases, Jordan failed to show that the Dispositions were non-exempt "sales." Nor could he. The Dispositions were pursuant to a plan approved by Dynegy's stockholders and awards approved by an authorized committee of Dynegy's Board. ROA.64–65; *see* 17 C.F.R. §§ 240.16b-3(d) & (e). Indeed, the Form 4 filings on which Jordan expressly relied themselves establish that these purported "sales" of Dynegy shares that Jordan sought to match with the purchases were exempt by Rule 16b-3 as pre-approved dispositions to Dynegy. ROA.65.

A.   **The Dispositions to Dynegy to pay tax obligations are exempt under Rule 16b-3(e) because they were pre-approved, authorized Dispositions to the issuer.**

As long as the terms are approved in advance by the issuer's board of directors, a committee of the board, or stockholders, Rule 16b-3(e) "exempt[s] dispositions of issuer equity securities to the issuer pursuant to . . . the right to have securities withheld, or to deliver securities already owned, either in payment of the exercise price of an option or to satisfy the tax withholding consequences of an option exercise or the vesting of restricted securities." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release Nos. 34-37260, 35-26524, 61 Fed. Reg. 30376-01 (June 14, 1996); 17 C.F.R. §§ 240.16b-3(d) & (e).

Jordan argues, however, that each specific transaction must be approved in advance. But, under Rule 16b-3, an issuer such as Dynegy is free to approve through its stockholders, board of directors, or a committee of the board, either "each specific transaction" or "a plan pursuant to which the terms and conditions of each transaction are fixed in advance."[12] 17 C.F.R. § 240.16b-3 n.3. And, this specifically includes plans which call for the disposition of shares through withholding for taxes:

---

[12] For the full text of Note 3 to Rule 16b-3, *see supra* n.7.

> Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved . . . such subsequent transaction *shall not require further specific approval*.

*Id.* (emphasis added); *see Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145-46 (2d Cir. 2002) ("So long as the relevant securities transaction is between an issuer and insider, and . . . the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation.").

Here, the Dispositions properly were approved and thus were exempt from Section 16(b). The terms of the Dispositions, which were made as part of the vesting of restricted stock units, were set and governed by (a) the SUA Agreements, which were approved by the Board Committee, and (b) the 2012 LTI Plan, which was approved on Dynegy's emergence from bankruptcy by its stockholders. ROA.65, 87, 183–194.

The SUA Agreements authorized Dynegy to "withhold from any cash or stock remuneration (including withholding any Stock Units

distributable to the Employee under this Agreement) then or thereafter payable to the Employee any tax required to be withheld by reason of such resulting compensation income." ROA.178. And that is exactly what happened; all of the Dispositions constituted the "[p]ayment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise, or vesting of a security issued in accordance with Rule 16b-3," an SEC exemption to Section 16(b). ROA.65. No further approval was required. 17 C.F.R. § 240.16b-3 n.3.

Indeed, the information reported in the SEC filings on which Jordan relies establishes that the Dispositions were routine, pre-approved transactions between the Officers and Dynegy arising from equity compensation awards, and thus exempt under Rule 16b-3(e). ROA.196–197, 199–200, 202–203, 205–206, 208–209, 211–212, 214–215, 217–218, 220–221, 223–224, 226–227.

**B.    Specific approval of each of the Dispositions was not required because the Board Committee previously approved the SUA Agreements and Dynegy's stockholders approved the 2012 LTI Plan.**

While Jordan's arguments are less than clear, in the district court he appeared to assert that the Dispositions are not exempt under Rule 16b-3(e) because each individual disposition was not subsequently (and

20

separately) approved by the Board at the time the individual disposition occurred, notwithstanding the Board Committee's and Dynegy's stockholders' prior approval of the SUA Agreements and the 2012 LTI Plan, respectively.[13] ROA.10, 245. But Jordan's assertion directly contradicts Rule 16b-3 and the SEC's notes explaining it, which state that:

> "Where the terms of a subsequent transaction (such as the exercise price of an option, *or the provision of an* exercise or *tax withholding right*) are provided for in a transaction as initially approved [by the Board], such subsequent transaction shall not require further specific approval."

17 C.F.R. § 240.16b-3 n.3 (emphasis added).

Indeed, similar arguments have been soundly rejected. *See Donoghue v. Casual Male Retail Grp., Inc.*, 427 F. Supp. 2d 350, 356 (S.D.N.Y. 2006) (stating that "the fact that Jewelcor could . . . choose among a certain number of ways of paying the exercise price" did not "place[] the Option Agreement beyond the scope of Rule 16b–3 exemption" and "[t]hus where the board of directors approved the grant

---

[13] As mentioned in Section I.C. below, Jordan now appears to have transitioned to a different argument on appeal, where he now alleges that the primary issue is whether the Dispositions were "discretionary transactions." Appellant's Br. at 15. That said, Jordan's Brief in this Court still contains vague references to the approval, or alleged lack thereof, of the Dispositions. *Id.* at 3, 9, 18, 23. Thus, while the Officers believe Jordan has abandoned his lack-of-approval arguments made below, they address that issue out of an abundance of caution.

of an option, including the provision of a withholding right, the board need not approve the subsequent exercise of the option and the related withholding of the shares to exercise the option."); *see also Pinnacle West Capital Corp.*, SEC No–Action Letter, 1992 WL 59852, at *3, *9 (Mar. 25, 1992) (finding that a plan that granted options for which payment of the exercise price could be made by check, in shares of common stock, or in a combination thereof satisfied the exemption requirements of former (arguably more stringent) Rule 16b–3(c)(2)(ii)).

Because the withholding provisions in the SUA Awards and the 2012 LTI Plan were approved in advance by the Board Committee, no further approval was required and the transactions are exempt under Rule 16b-3(e).

## C.    The Dispositions were not "Discretionary Transactions."

Although Jordan's arguments in the district court focused on whether the Dispositions were properly approved, he now asserts that "[w]hether the sale is non-exempt turns exclusively upon whether it is a discretionary transaction" and argues that both Dynegy (the issuer) and the Officers (the insiders) had discretion in the transactions. Appellant's

Br. at 15. But like his approval argument in the district court, Jordan's new "discretionary transaction" argument is meritless.[14]

As an initial matter, Jordan already has admitted that the issuer, Dynegy, has "no discretion" with regard to the withholding obligations. ROA.10. That fatal admission aside, and contrary to Jordan's assertion that the Rule 16(b)-3(e) "exemption is based upon the Issuer *not* having discretion in the transaction" (Appellant's Br. at 7) (emphasis in original), any alleged discretion on the part of the *issuer* is completely irrelevant to the "Discretionary Transaction" carve-out in Rule 16b-3(e). Indeed, Rule 16b-3(e) states:

> (e) **Dispositions to the issuer.** Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

That same rule defines discretionary transactions as follows:

> (b) *Definitions* - (1) A *Discretionary Transaction* shall mean a transaction pursuant to an employee benefit plan that:
>
>> (i)    Is at the volition of a *plan participant*;

---

[14] Besides being meritless, it also is waived as, again, arguments not raised before the district court are waived and cannot be raised for the first time on appeal. *Tex. Commercial Energy*, 413 F.3d at 510.

> (ii)   Is not made in connection with the participant's death, disability, retirement or termination of employment;
>
> (iii)   Is not required to be made available to a plan participant pursuant to a provision of the Internal Revenue Code; and
>
> (iv)   Results in either an intra-plan transfer involving an issuer equity securities fund, or a cash distribution funded by a volitional disposition of an issuer equity security.

17 C.F.R. § 240.16b-3(b) (emphasis added).

Thus, Rule 16b-3 makes clear that whether a transaction is a "discretionary transaction," and therefore not exempt under Rule 16b-3(e), is focused solely on the "plan participant's" (the insider's) discretion and has nothing to do with the *issuer's* discretion. And, with respect any supposed discretion on the Officers' part, Jordan has not even alleged, much less shown, nor can he, that the Dispositions satisfy each of definitional requirements of a "discretionary transaction," as he must. For instance, Jordan has not alleged or shown that the Dispositions resulted in an "intra-plan transfer involving an issuer equity securities fund" or any "cash distribution." *See* 17 C.F.R. § 240.16b-3(b)(iv). Nor do the SUA Agreements support the proposition that the Officers had any discretion; rather, those agreements state that

"the Employee *shall* deliver to the Company at the time of such receipt, as the case may be, such amount of money as the Company may require to meet its obligation under applicable tax laws or regulations . . . ." ROA.178. (Emphasis added.) If there was any discretion, it was the issuer's discretion in what to do in response, and that discretion is irrelevant to the Rule 16b-3 analysis.

Accordingly, despite his attempt to pivot to a new argument, Jordan's claims still fail under the plain terms of Rule 16b-3.

### D.   The typographical error in the district court's order granting the Officers' Motion to Dismiss is harmless.

Placing form over substance, Jordan spills much ink complaining that the district court's order granting the Officers' motion to dismiss incorrectly cites to "Section 16b-3(e)" of the Securities Exchange Act versus Rule 16b-3(e) implementing the Securities Exchange Act. While hyper-technically true, the district court's citation to "Section 16b-3(e)" obviously was an inconsequential typographical error, especially considering that the principal question before the district court was whether the Dispositions were exempt from *Section* 16(b) based on the SEC promulgated exemptions set forth in *Rule* 16b-3(e). Moreover, the mistake is harmless in light of this Court's *de novo* review. Thus, there

is no reason for district court's inadvertent, harmless citation error to consume this Court's review, and, in any event, the Court may treat the error as corrected.[15]

## II.    The Dispositions Are Not "Sales" Under Section 16(b).

Finally, even if the Dispositions somehow did not fall squarely within the exemption of Rule 16b-3(e), and they absolutely do, the Dispositions would not constitute "sales" for Section 16(b) purposes because they were not the type of transactions that "may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co.*, 411 U.S. at 594-95.

---

[15] *See, e.g., In re U.S. Healthcare, Inc.*, 193 F.3d 151, 158 n.2 (3d Cir. 1999) (where the district court committed a clerical error in failing to remand all remaining claims, appellate court treated the error as if it had been corrected); *Hamilton v. Stillwell Van & Storage Co.*, 343 F.2d 453, 455 (3d Cir. 1965) (where trial court directed the clerk to enter a judgment on verdict and court allowed 6% interest, but the clerk failed to calculate the judgment amount and enter it in the clerk's records, the appellate court thought it "wise judicial administration under the particular facts to deal finally with these appeals now instead of first remanding them for the formal entry of judgment," and treated the judgment as if it had been recorded by the clerk); *Crosby v. Pac. S.S. Lines*, 133 F.2d 470, 473–74 (9th Cir. 1943) (where attempted appeal of an order was technically invalid because there was no order dismissing the petition, the appellate court treated the order as amended for a proper appeal. The appellate court explained that "[i]t would be mere form for us to remand the case so that the amendment might be made, and therefore we shall consider the order as amended.").

In enacting Section 16(b), "Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243 (1976); *see Mercer*, 712 F.3d at 757-58 (Section 16(b) "is designed to prevent statutory insiders . . . from engaging in speculative transactions on the basis of information not available to others" (internal quotation marks and citation omitted)).[16]

Thus, "[i]n deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information." *Kern Cnty. Land Co.*, 411 U.S. at 594-95. When a corporate insider engages in an "involuntary transaction . . . having no access to inside information," Section 16(b) does not apply because such

---

[16] In promulgating Rule 16b-3, the SEC also recognized that "the purchase of securities from, or sale of securities to, the issuer by a director or officer does not present the same informational asymmetry, and associated opportunity for speculative abuse, that, according to the Supreme Court, Congress was targeting in enacting section 16(b)." *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 505 (3d Cir. 2008).

a transaction does not create the potential for speculative abuse. *At Home Corp. v. Cox Commc'ns, Inc.*, 446 F.3d 403, 408 (2d Cir. 2006). In addition to being expressly exempt by Rule 16b-3, the Dispositions also meet this test.

Here, the Dispositions were made following the terms of equity compensation that the Board Committee and Dynegy's Board—not the Officers—determined and approved in advance, with the Officer's having no control or discretion about when the awards vested or at what price. ROA.65, 183–194. To be clear, with respect to all of the Dispositions, the Officers are not alleged to have had _any_ control over the time of the transaction, the amount of the tax payment made to Dynegy, or the price at which the restricted stock units were disposed. Those amounts were determined at the time of vesting based on the terms of the Officers' equity compensation awards that were set when the compensation was granted, years before.

Moreover, "issuer-insider transactions, where both parties have the benefit of 'insider' information, are not comprehended within the purpose of Section 16(b)," which is to "prevent[] insiders from taking advantage of 'information not available to others.'" *Roth ex rel. Beacon*

*Power Corp.*, 522 F.3d 242, 249 (2d Cir. 2008) (citation omitted). The Dispositions simply did not create any plausible opportunity for abusive trading and thus were not "sales" under Section 16(b).

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: August 16, 2017                    Respectfully submitted,


                                          */s/ Jay K. Wieser*

Joseph A. Fischer, III                    Jay K. Wieser
Texas State Bar No. 00789292              Texas State Bar No. 24060826
Jackson Walker L.L.P.                     JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900                 777 Main Street, Suite 2100
Houston, Texas 77010                      Fort Worth, Texas 76102
(713) 752-4200                            (817) 334-7200
(713) 752-4221 (Fax)                      (817) 334-7290—Fax
Email: tfischer@jw.com                    Email: jwieser@jw.com

COUNSEL FOR DEFENDANTS-APPELLEES

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2017, a copy of the foregoing document was filed electronically using the Court's Electronic Case Filing System. I also hereby certify that a copy of the foregoing document was served on the Plaintiff-Appellant by facsimile to (504) 737-3854, by electronic mail to jdsgold@gmail.com, and by U.S. First Class mail to the following address:

> J.D. Jordan
> Box 23866
> New Orleans, LA 70183

Counsel also certifies that on August 16, 2017, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with Trend Micro OfficeScan Client version 10.6 and is free of viruses.

*/s/ Jay K. Wieser*
Jay K. Wieser

COUNSEL FOR DEFENDANTS-APPELLEES

CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5,879 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Century Font 14-point type face.

*/s/ Jay K. Wieser*
Jay K. Wieser

COUNSEL FOR DEFENDANTS-APPELLEES